ADELINE ROACH

*v.*

WILLIAM W. HARPER

(No. 10955)

Submitted September 16, 1958. Decided November 11, 1958.

*William E. Conklin,* for plaintiff in error.

*W. W. Ingram, Callie Tsapis, Ruth Turner,* for defendant in error.

GIVEN, JUDGE:

Plaintiff, Adeline Roach, instituted an action of trespass on the case in the Circuit Court of Hancock County, against defendant, William W. Harper, claiming damages for invasion by defendant of the "right to privacy" of plaintiff, in that defendant, by means of a hearing device installed by him in an apartment rented by him to plaintiff, overheard "confidential and private conversations" of plaintiff. Defendant demurred to the declaration, contending that no right of action exists in this State for recovery of damages occasioned by invasion of privacy, that the declaration was insufficient in law in that it contained no allegation to the effect that any conversation heard by defendant was repeated or pub-

lished, and in that it contained no allegation to the effect that plaintiff suffered any special damages. The trial court sustained the demurrer, and dismissed the action, with prejudice.

The declaration charges that defendant, about August, 1956, rented an apartment to plaintiff, which she thereafter occupied as a residence; that before the renting of the apartment, defendant caused to be installed therein "some sort of a receiving set or listening device which was connected to a speaker in the office of said defendant", by means of which defendant did "repeatedly invade the privacy of this plaintiff's said apartment", and, between August 1, 1956 and February 12, 1957, "maliciously, wantonly, unlawfully and secretly did, on divers occasions * * * listen over said speaker and through the same did hear everything said and done by the plaintiff in her said apartment on said occasions", including numerous personal, social, private and confidential conversations.

We have been cited no case decided by this Court, and have found none, which considers the precise question posed. No statute of this State governs or relates directly to the question. The question, however, has reached many courts of this country, and has been exhaustively and historically considered by numerous law writers and in numerous court opinions. An article, The Right to Privacy, written by Samuel D. Warren and Louis D. Brandeis, published about 1890 in 4 Harvard Law Review 193, perhaps the pioneering article, has been most often referred to and is considered a leading article supporting the theory of the existence of a right of action for the invasion of privacy. Other leading authorities considering the question are: Interests of Personality, 28 Harvard Law Review 343, at 362; The Right of Privacy, 2 Columbia Law Review 437; The Law of Privacy, 12 Columbia Law Review 693; The Right of Privacy, 39 Michigan Law Review 526; Restatement of the Law of Torts, Section 867; 41 Am. Jur., Privacy, Section 2, et seq; 77 C. J. S., Right of Privacy, Section 2 et seq.

The existence of the right is refuted in an article published in 3 Northwestern Law Review 1. In the late, very excellent, work of Harper and James, Law of Torts, Vol. 1, page 690, it is stated: "The 'right of privacy' has had an extensive development since Brandeis and Warren wrote their article. On the whole, the courts have been sympathetic with it in spite of the delicacy of the problems raised and the difficulty of drawing the nice line which separates what the individual may keep to himself and what the public is entitled to know about him. All will admit that some intrusions into one's personal life are so indecent and outrageous and calculated to cause such excruciating mental pain to all but the most callous that it would be a reproach to the law not to allow redress. On the other hand, it is equally clear that society cannot protect the neurotically thin-skinned against those trivial invasions of privacy which the normal person suffers with equanimity. The mores and the law must distinguish the one from the other."

Before the publication of the Warren-Brandeis article, however, in *DeMay* v. *Roberts*, 46 Mich. 160, 9 N. W. 146, the Court permitted recovery on the basis of invasion of rights of privacy, in a case where the attending physician was responsible for the presence of a young unmarried man during the time plaintiff was in pain of parturition, the Court saying: "* * * The plaintiff had a legal right to the privacy of her apartment at such a time, and the law secures to her this right by requiring others to observe it, and to abstain from its violation. The fact that at the time, she consented to the presence of Scattergood supposing him to be a physician, does not preclude her from maintaining an action and recovering substantial damages upon afterwards ascertaining his true character. In obtaining admission at such a time and under such circumstances without fully disclosing his true character, both parties were guilty of deceit, and the wrong thus done entitles the injured party to recover the damages afterwards sustained, from shame

and mortification upon discovering the true character of the defendants.

"Where a wrong has been done another, the law gives a remedy, and although the full extent and character of the injury done may not be ascertained or known until long after, yet in an action brought damages therefor may be fully awarded * * *".

In *Rhodes* v. *Graham*, 238 Ky. 225, 37 S. W. 2d 46, the plaintiff alleged invasion of right of privacy by means of unwarranted and secret tapping of a telephone line of plaintiff by defendants. In overruling the demurrer to an amended petition, the Court said: "The evil incident to the invasion of the privacy of the telephone is as great as that occasioned by unwarranted publicity in newspapers and by other means of a man's private affairs for which courts have granted the injured person redress. Whenever a telephone line is tapped the privacy of those talking over the line is invaded and conversations, wholly proper and confidential, may be overheard. Wire tapping is akin to eavesdropping, which was an indictable offense at common law, and while it has not been made a punishable offense by statute in this state, we conclude that the facts alleged in the petition in this case constitute a wrong done to appellant for which the law affords a remedy by an action for damages." See *Gregory* v. *Bryan-Hunt Co.*, 295 Ky. 345, 174 S. W. 2d 510.

In *McDaniel* v. *Atlanta Coca-Cola Bottling Co.*, 60 Ga. App. 92, 2 S. E. 2d 810, defendant caused to be installed in a private hospital room, in which plaintiff was a patient, a receiving set which was connected to a set of earphones in a room above that of plaintiff, by means of which defendant could hear conversations of plaintiff. In holding that the petition stated a cause of action, the Court said: "It is earnestly contended by counsel for the defendant in error that, in the offense of the invasion of the privacy of another, the gravamen or essence of the action is publication or commercialization of the information obtained, and that without such no action is

maintainable. There is nothing in the decided cases of this State, however, which indicates any such limitation or qualification of the right, and we think that under the decisions a person's privacy is invaded, in a case like the present, even though the information obtained be restricted to the immediate transgressor. Publication or commercialization may aggravate, but the individual's right to privacy is invaded and violated nevertheless in the original act of intrusion. It is clear that the petition in the present case set out a cause of action." See *Pavesich* v. *New England Life Insurance Co.*, 122 Ga. 190, 50 S. E. 68.

In a well considered case, *Eick* v. *Perk Dog Food Co.*, 347 Ill. App. 293, 106 N. E. 2d 742, the Court, after holding that the amended complaint stated a cause of action, reversing the trial court, stated: "* * * These allegations state a cause of action for violation of an interest which has become known as the right of privacy. The question of whether or not such a right exists in Illinois has never been passed upon by any court of review in this state.

"The right is now recognized by the great preponderance of authority throughout the country. Courts of at at least twenty American jurisdictions have explicitly recognized the right either in direct holdings or well considered dicta * * * [citing numerous authorities]

"Following the lead of Samuel Warren and Louis D. Brandeis, whose famous article The Right of Privacy, 4 Harv. L. R. 193 (1890) first used the phrase 'right of privacy,' distinguished writers have supported the recognition of the right. Larremore, The Law of Privacy, 12 Col. L. R. 693 (1912); Pound, Interests in Personality, 28 Harv. L. R. 343, 362-4 (1915); Winfield, Privacy, 47 Law Q. R. 23 (1931); Green, Right of Privacy, 27 Ill. L. R. 237 (1932); Nizer, Right of Privacy, 39 Mich L. R. 526 (1941); Thayer, Legal Control of The Press, Ch. 12 (1944); Feinberg, Recent Developments in the Law of Privacy, 48 Col. L. R. 713 (1948). In American Juris-

prudence, Vol. 41, pg. 927, it is stated that the preponderance of authority supports the view that there is a legal 'right of privacy,' the invasion of which gives a right to a cause of action. This is likewise supported by articles in the American Law Reports, 138 A. L. R. 22; 168 A. L. R. 446; 14 A. L. R. 2d 750, and by 54 Corpus Juris, 816, Right of Privacy, 1931, 77 C. J. S., Right of Privacy, §1. The right is defined and approved in the Restatement of Torts, Sec. 867.

"Against this massive weight of authority there is pitted a small, largely inconclusive group of opinions written for the most part before the bulk of the cases upholding the right of privacy were decided. Only one of the cases cited as denying the existence of the right of privacy stands today as an unqualified precedent refusing to recognize the right * * *".

In *Housh* v. *Peth,* 165 Ohio St. 35, 133 N. E. 2d 340, the Court stated: "In Ohio the lower courts have acknowledged the right, but counsel are agreed that it still is a matter of first impression in this court. However, since both reason and authority are convincingly in favor of recognition of the right, it would seem that Ohio, too, should not hesitate to take the definite step of approving this salutary and progressive principle of law." See *Welsh* v. *Pritchard,* 125 Mont. 517, 241 P. 2d 816; *Hinish* v. *Meier & Frank Co.,* 166 Or. 482, 113 P. 2d 438; *In re Joseph Lanza,* 163 N. Y. S. 2d 576; *Watson* v. *Dilts,* 116 Iowa 249, 89 N. W. 1068; *Jacova* v. *Southern Radio and Television Co.,* (Fla.) 83 S. 2d 34; *Abernathy* v. *Thornton,* 263 Ala. 496, 83 S. 2d 235; *Langford* v. *Vanderbilt' University,* 199 Tenn. 389, 287 S. W. 2d 32; *Roberson* v. *Rochester Folding Box Co.,* 171 N. Y. 538, 64 N. E. 442.

The cases cited, we think, are sufficiently illustrative. An attempt to collate here the many pertinent holdings would be useless. That end has been attained in annotations in 14 A. L. R. 2d 750, 168 A. L. R. 446 and 138 A. L. R. 23. The author of the last cited annotation, in summary, says, page 28: "The brief review above shows

a decided preponderance of authority favoring the view that there is a legal right of privacy that will be given protection as such. It discloses, in fact, that since the enactment of the New York privacy statute there is only one American jurisdiction, namely, Rhode Island, in which it can be definitely said, on the basis of actual decisions, that there is no such legal concept as the right of privacy."

"The 'right of privacy' has been defined as the right of an individual to be let alone, to live a life of seclusion, or to be free from unwarranted publicity." 77 C. J. S., Right of Privacy, Section 1. The right of privacy is closely related to many other subjects of law, e. g., libel and slander, literary property, wrongful search and seizure, compulsory physical examination and eavesdropping. 41 Am. Jur., Privacy, Section 1. Though different in some respects from such subjects, the right to privacy is an individual right that should be held inviolate. To hold otherwise, under modern means of communication, hearing devices, photography, and other technological advancements, would effectively deny valuable rights and freedoms to the individual. The usual argument against the existence of the right of action is that it is for a wrong or tort for which no recovery was permitted at common law. We need not here, however, theorize as to the basis for the existence of the right. See 41 Am. Jur., Privacy, Section 6, et seq. As above pointed out, that existence has been affirmed by the very great weight of authority. It may not be amiss, however, to quote language of Judge Parker in the opinion in *Barnes Coal Corporation* v. *Retail Coal Merchants Ass'n.*, 128 F. 2d 645, 648 (4th Cir.): "* * * It must be remembered, in this connection, that the common law is not a static but a dynamic and growing thing. Its rules arise from the application of reason to the changing conditions of society. It inheres in the life of society, not in the decisions interpreting that life; and, while decisions are looked to as evidence of the rules, they are not to be construed as limitations upon the growth of the law but

as landmarks evidencing its development. As was said in Hurtado v. California, 110 U. S. 516, 530, 4 S. Ct. 292, 28 L. Ed. 232, 'Flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law' * * *".

Having reached the conclusion that the plaintiff has the right to maintain her action for invasion of privacy, we reach the questions of whether a declaration in such an action, to be sufficient against demurrer, must allege special damages and publication. Courts which have followed the doctrine of the existence of the right of action have had no difficulty in reaching the conclusion that an allegation of special damages is not necessary to the validity of the pleading. We think the conclusion logical. The invasion of the right, the tort committed, gives right to the action, the right to recover damages. "Publication or commercialization may aggravate, but the individual's right to privacy is invaded and violated nevertheless in the original act of intrusion." *McDaniel* v. *Atlanta Coca-Cola Bottling Co., supra.* Questions of special damages, of course, may arise so as to enhance recovery. Also, circumstances may arise which would mitigate damages. 41 Am. Jur., Privacy, Sections 13, 34; Annotation 138 A. L. R. at page 48. The same reasoning leads to the conclusion that a declaration in such an action, to be sufficient against demurrer, need not allege publication of information or results obtained through the invasion. 41 Am. Jur., Privacy, Section 20; Annotation 138 A. L. R. 63.

The judgment of the trial court complained of is reversed, the action is reinstated, and remanded to the Circuit Court of Hancock County.

*Reversed and remanded.*