STATE of Alaska, Petitioner,

v.

Theodore GLASS, Respondent.

No. 3565.

Supreme Court of Alaska.

Sept. 15, 1978.

---

Richard J. Ray, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for petitioner.

David C. Backstrom, Deputy Public Defender, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for respondent.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

BOOCHEVER, Chief Justice.

The sole issue presented by this petition for review is whether the superior court erred in granting a motion to suppress evidence obtained by electronic surveillance of the alleged narcotics transaction which gave rise to the respondent's indictment.

The facts, insofar as they are important to our decision of this issue, can be briefly stated. On April 26, 1977, members of the Fairbanks Areawide Narcotics Team, a police unit made up of state and local officers, fitted a police informant, Rondi Baker, with a small radio transmitting device. Baker was then transported to respondent Theodore Glass' home where she believed she could purchase heroin. Baker entered and, while on the premises, allegedly purchased a quantity of heroin from Glass. The conversation surrounding that transaction was electronically recorded by police officers stationed outside the home by monitoring the frequency of the transmitter worn by Baker. The monitoring and recording of that conversation was done without benefit of a search warrant or other order of the court.

■ As a result of these events, Glass was indicted on two counts—possession of a narcotic drug and sale of a narcotic drug—

in violation of AS 17.10.010. Prior to his trial, he moved to suppress all evidence of the tape recording, alleging violation of his rights under the fourth amendment to the Constitution of the United States and art. I, sec. 14 of the Constitution of the State of Alaska, both of which prohibit unreasonable searches and seizures, and under art. I, sec. 22 of the Alaska Constitution, which guarantees Alaska's citizens the right to privacy. The superior court granted Glass' motion, stating in a written opinion:

> No warrant was obtained by the State although the circumstances most certainly provided sufficient time for application therefor to have been presented to an impartial magistrate. The subject broadcasts from within the confines of the defendant's home were searches and were severe invasions into the privacy of the defendant. The Constitution of the State of Alaska mandates suppression of the tape recording of the transaction. The live testimony of the informant is still allowable.

This ruling is now before this court on the state's petition for review.[1]

The issue in this case is of substantially more significance than whether or not Theodore Glass committed the offense charged in the grand jury's indictment. It presents a question of major importance as to the scope of the right to privacy expressly set forth by an amendment to the Alaska Constitution: "The right of the people to privacy is recognized and shall not be infringed. . . ."[2]

■ In its petition, the state relies primarily upon federal decisions dealing with the fourth amendment to the United States Constitution.[3] The authority is questiona-

---

1. We granted the petition for review to resolve a controlling question of law as to which there is substantial ground for difference of opinion. Review will materially advance the ultimate termination of the litigation, and the question is of sufficient importance to justify our immediate attention. *See* Appellate Rules 23 and 24.

2. Art. I, sec. 22, Alaska Constitution.

3. The fourth amendment to the United States Constitution specifies:

> *Searches and seizures.* The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

ble, and, in our view, not persuasive as to the construction of Alaska's analogous provision.[4] In any event, those authorities should not be regarded as determinative of the scope of Alaska's right to privacy amendment, since no such express right is contained in the United States Constitution.[5]

Looking first to the federal cases cited by the state, we note that all except *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), pre-date the major change wrought by *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). At the trial of Katz, the government was permitted to introduce evidence of telephone conversations overheard by F.B.I. agents who had attached a listening and recording device to the outside of a public telephone booth from which Katz had placed his calls. Previously, fourth amendment cases had been considered from a property standpoint—whether a trespass had been committed. In *Katz*, the court held that the "Fourth Amendment governs not only the seizure of tangible items, but extends as well as to the recording of oral statements," 389 U.S. at 353, 88 S.Ct. at 512, 19 L.Ed.2d at 583, independent of trespass considerations. The court indicated that the warrant requirement of the fourth amendment had no fixed locational limita-

tions: "Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures." 389 U.S. at 359, 88 S.Ct. at 515, 19 L.Ed.2d at 586. The court stated that the fourth amendment "protects people, not places." 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582. It thus was immaterial whether the phone booth was a "constitutionally protected" area.[6]

One who occupies it, shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world.[7]

■ We believe that one who engages in a private conversation is similarly entitled to assume that his words will not be broadcast or recorded absent his consent or a warrant.

■ Justice Harlan, in his concurrence in *Katz*, discussed the protection the fourth amendment affords to people. He set forth a dual requirement—first, that a person have exhibited an actual (subjective) expectation of privacy; and, second, that the expectation be one that society is prepared to recognize as reasonable.[8] We have adopted that rationale for Alaska.[9]

---

searched, and the persons or things to be seized.

4. Art. I, sec. 14 of Alaska's Constitution provides:

Searches and Seizures. The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

5. The United States Supreme Court has inferred a right to privacy as to certain activities from other rights set forth in the first ten amendments. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (individual decision to have an abortion); *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (private possession of obscene materials); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (use of contraceptives by married persons).

6. Similarly, we believe that the dissent's reliance on *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), and general citation to other authorities predating *Katz* fails to recognize the significance of the demise of a trespass requirement and the subjecting of conversations to search and seizure provisions.

7. 389 U.S. at 352, 88 S.Ct. at 511, 19 L.Ed.2d at 582.

8. 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588.

9. *See Smith v. State*, 510 P.2d 793, 797 (Alaska), *cert. denied*, 414 U.S. 1086, 94 S.Ct. 603, 38 L.Ed.2d 489 (1973), *quoting* Justice Harlan's opinion in *Katz* as a "touchstone." We have repeatedly reaffirmed this test. *Woods & Rohde, Inc. v. State*, 565 P.2d 138, 149 (Alaska 1977); *Anderson v. State*, 555 P.2d 251, 260–61 (Alaska 1976); *Nathanson v. State*, 554 P.2d 456, 458 (Alaska 1976).

*Katz* did not involve the surreptitious broadcasting or recording of a conversation by a party to the conversation. After the *Katz* decision, there was a division of opinion among the federal courts regarding consensual eavesdropping.[10] The issue was confronted by the United States Supreme Court in *United States v. White, supra.* Government agents were permitted to testify as to conversations between the accused and an informant who carried a concealed radio transmitter. The informant did not appear as a witness. The United States Court of Appeals for the Seventh Circuit reversed the convictions, holding the evidence to be inadmissible under *Katz.*[11]

Speaking for four members of the Supreme Court, Justice White held that there was no violation of the fourth amendment and that, in any event, the case pre-dated *Katz* which was therefore not applicable. Under the decision in *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), *Katz* was held to apply only to surveillance that occurred subsequent to the date of that decision.

Justice Brennan concurred in the result on the basis of *Desist*; but he agreed with the views of the dissenters, Justices Marshall, Douglas and Harlan, that undisclosed electronic broadcasting or recording of a conversation by a participant violated the fourth amendment in the absence of a warrant. Justice Black concurred in the judgment because of his dissent in *Katz* which expressed the view that conversations can neither be searched nor seized and are, therefore, not subject to fourth amendment protection.

In construing similar provisions of Alaska's Constitution, we, of course, give careful consideration to the holdings of the United States Supreme Court, although we are not bound by them.[12] *White*, however, does not present a clear cut agreement by any majority of the justices, and our decision as to Alaska's Constitution should therefore be influenced solely by the reasoning supporting the differing positions. Moreover, the United States Supreme Court has carefully stated:

> [T]he protection of a person's *general* right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States. (footnote omitted, emphasis in original)[13]

In *Holmes v. Burr*, 486 F.2d 55 (9th Cir.), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973), the court was confronted with a case in which Marberger, a participant in a telephone conversation with Holmes, permitted government agents to eavesdrop and record the conversation. The tape was admitted at trial. Despite

10. *See* Saunders, "Electronic Eavesdropping and the Right to Privacy," 52 Boston U.L.Rev. 831, 832 (1972). *Compare United States v. Jones*, 292 F.Supp. 1001 (D.D.C.1968), *reversed*, 140 U.S.App.D.C. 70, 433 F.2d 1176 (1970), *with United States v. Devore*, 423 F.2d 1069 (4th Cir. 1970), *cert. denied*, 402 U.S. 950, 91 S.Ct. 1604, 29 L.Ed.2d 119 (1971); *United States v. Polansky*, 418 F.2d 444 (2d Cir. 1969); *United States v. Gardner*, 416 F.2d 879 (6th Cir. 1969); *Koran v. United States*, 408 F.2d 1321 (5th Cir. 1969), *cert. denied*, 402 U.S. 948, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971); *United States v. Kaufer*, 406 F.2d 550 (2d Cir. 1969), *aff'd*, 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414 (1969), and *Dancy v. United States*, 390 F.2d 370 (5th Cir. 1968). *See also, Doty v. United States*, 416 F.2d 887 (10th Cir. 1968), *vacated and remanded with instructions to dismiss, sub nom., Epps v. United States*, 401 U.S. 1006, 91 S.Ct. 1247, 28 L.Ed.2d 542 (1971).

11. 405 F.2d 840 (7th Cir.), *aff'd en banc*, 405 F.2d 838 (1969).

12. We may construe Alaska's constitutional provisions as affording additional rights. *See, e. g., Zehrung v. State*, 569 P.2d 189 (Alaska 1977), *opinion on rehearing*, 573 P.2d 858 (Alaska 1978) (search and seizure); *Woods & Rohde, Inc. v. State*, 565 P.2d 138 (Alaska 1977) (search and seizure); *Blue v. State*, 558 P.2d 636 (Alaska 1977) (right to counsel at pre-indictment line-up); *Isakson v. Rickey*, 550 P.2d 359 (Alaska 1976) (equal protection); *Yarbor v. State*, 546 P.2d 564 (Alaska 1976) (speedy trial); *Scott v. State*, 519 P.2d 774 (Alaska 1974) (self-incrimination); *R. L. R. v. State*, 487 P.2d 27 (Alaska 1971) (jury trial in delinquency proceeding); *Baker v. City of Fairbanks*, 471 P.2d 386 (Alaska 1970) (jury trial).

13. *Katz v. United States*, 389 U.S. at 350–51, 88 S.Ct. at 510–11, 19 L.Ed.2d at 581.

*White*, Judge Hufstedler dissented from a holding affirming the conviction. The rapid expansion of governmental surveillance by wiretapping and bugging is reviewed in that dissent. Judge Hufstedler states that participant monitoring and electronic surveillance are much more widespread, running into tens of thousands of instances per year. *Id.* at 65. She states:

> In a pluralistic society dedicated to liberal democratic traditions, confidential communication serves as a lubricant for the smooth functioning of social and political institutions. Without "uninhibited, robust, and wide-open" public and private expression on the great issues of our day, as well as private discussion about the mundane, the trivial, and the banal, a once free society will soon become a nation of "hagridden and furtive" people.
>
> . . .
>
> The corrosive impact of warrantless participant monitoring on our sense of security and freedom of expression is every bit as insidious as electronic surveillance conducted without the consent of any of the parties involved. In terms of the individual's reluctance to speak freely no qualitative difference exists between the danger posed by third party interception and the risk that his auditor has sanctioned a secret recording of their conversation. Extensive police-instigated and clandestine participant recordings, coupled with their use as evidence of any self-incriminating remarks of the speaker, pose "a grave danger of chilling all private, free, and unconstrained communication. . . . In a free society, people ought not to have to watch their every word so carefully." *Lopez v. United States*, . . . 373 U.S. at 452, 83 S.Ct. at 1395 (Brennan, J., dissenting).[14]

The dissent points out that to say that Marburger's consent is Holmes' consent is a fiction that has been expressly rejected by the Supreme Court in the context of warrantless searches and seizures.[15] The evidence therefore is inadmissible on any consent theory.[16]

The principal distinction between the risk that one's confidant may be a gossip and the risk that the conversation is being broadcast or recorded is explained:

> Repetition of conversations thought to be confidential is a known risk. However, the risk that one's trusted friend may be a gossip is of an entirely different order than a risk that the friend may be transmitting and recording every syllable. The latter risk is not yet rooted in common American experience, and it should not be thrust upon us: the differences between talking to a person enswathed in electronic equipment and one who is not are very real, and they cannot be reduced to insignificance by verbal legerdemain. All of us discuss topics and use expressions with one person that we would not undertake with another and that we would never broadcast to a crowd. Few of us would ever speak freely if we knew that all our words were being captured by machines for later release before an unknown and potentially hostile audience. No one talks to a recorder as he talks to a person.[17]

In the case at bar, the state argues that there is no difference between talking to a friend who repeats what is told in confidence and talking to one with a transmitter or recorder. All one needs do to refute that statement is to ask the question of oneself; would it make a substantial difference to the speaker to assume the risk, not only that one's confidence will be betrayed by oral recollections, but also the risk that one's remarks will be secretly recorded or broadcast? Certainly, many of the casual, the caustic, the irreverent remarks would

---

14. 486 F.2d at 65–66.

15. *Id.* at 71.

16. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (hotel manager cannot consent on behalf of guest to search of guest's room); *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord cannot consent to search of tenant's quarters). *See also, Robinson v. State*, 578 P.2d 141 (Alaska 1978).

17. 486 F.2d at 72.

be inhibited, as would criticism of individuals and policies. The employee could not with impunity point to shortcomings in his superiors or in the functions of his office. Families could not freely discuss the foibles of others. Clever prodding may elicit thoughtless comments about sex, religion, politics, acquaintances, personal finances and even one's innermost thoughts. One takes the risk that his friend may repeat what has been said. One shouldn't be required to take the additional risk of an entirely different character—that his conversation is being surreptitiously transcribed or broadcast.

A confidence repeated by a false friend is received by third parties with the attendant circumstances of the "friend's" credibility and memory. One's ill-considered remarks are not thereby preserved for posterity on the reels of magnetic tape nor insulated from the faded memories inherent in the passage of time. Faced with the choice of silence or the risk that comments will be "etched in stone," a speaker may choose the former alternative, to the manifest diminution of the spontaneity which marks our daily discourse.[18]

■ To argue that the monitored conversation is admissible because it is merely a more reliable version of the informant's testimony is to respond to an irrelevant question. Contraband discovered in an illegal entry by police is inadmissible although it is the best evidence that contraband was present. We exclude the evidence not because it is unreliable but because the transcendent values preserved by constitutional guarantee are of greater societal moment than the use of that evidence to obtain a criminal conviction. *See Holmes v. Burr*, 486 F.2d at 74 (Hufstedler, J., dissenting). It is axiomatic that police conduct may not be justified on the basis of the fruits obtained. *Schraff v. State*, 544 P.2d 834 (Alaska 1975).

It is, of course, easy to say that one engaged in an illegal activity has no right to complain if his conversations are broadcast or recorded. If, however, law enforcement officials may lawfully cause participants secretly to record and transcribe private conversations, nothing prevents monitoring of those persons not engaged in illegal activity, who have incurred displeasure, have not conformed or have espoused unpopular causes.

Six of the seven justices of the Michigan Supreme Court held, recently, in the absence of a specific privacy provision such as that contained in Alaska's Constitution, that the defendant was denied the right under the Michigan Constitution to freedom from an unreasonable search and seizure when a police officer testified to a conversation between the defendant and an informant equipped with a concealed transmitter which relayed the conversation to the officer without the defendant's knowledge. *People v. Beavers*, 393 Mich. 554, 227 N.W.2d 511, 516, *cert. denied*, 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111 (1975).

An even more compelling reason for such a ruling is presented by Alaska's specific constitutional provision recognizing a right to privacy which shall not be infringed. The Montana Supreme Court has recently held in *State v. Brackman*, 582 P.2d 1216 (Mont.1978), that its constitutional right to privacy provision which states in part that the right to privacy "shall not be infringed without the showing of a compelling state interest" prohibited surreptitious broadcasting to the police of a conversation by a party to the conversation. Two justices dissented on the basis that there was no expectation of privacy since the conversation occurred in the public parking lot of a shopping center.

■ Although there is no recorded legislative history of Alaska's right to privacy

18. In this context, seizure of a conversation and the ideas expressed therein may implicate rights of free speech guaranteed by the first amendment to the United States Constitution and art. I, sec. 5 of the Alaska Constitution.

Knowledge that the courts will permit warrantless monitoring of innocent conversations could chill the conversations themselves. *See Burkhart v. Saxbe*, 448 F.Supp. 588, 603 (E.D. Pa.1978).

provision,[19] it is clear that it affords broader protection than the penumbral right inferred from other constitutional provisions.[20] Were that not the case, there would have been no need to amend the constitution.

Federal courts have recognized the power of the states to regulate rights to privacy in a manner broader than the federal protections.[21] California has specifically included surveillance and data collecting activities within the aegis of its right to privacy amendment. *White v. Davis*, 13 Cal.3d 757, 120 Cal.Rptr. 94, 105, 533 P.2d 222, 233 (1975).

Assistance in ascertaining some purposes behind Alaska's privacy amendment may be obtained, despite the lack of a recorded history, from analogy to similar provisions recently enacted by other states.

Hawaii, which became a state immediately after Alaska, similarly had no express right to privacy in its original constitution. In 1968, its constitution was amended to add the phrase "invasions of privacy" to the provisions on search and seizure. The amended section reads:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures, and invasions of privacy shall not be violated.[22]

In *State v. Roy*, 54 Haw. 513, 510 P.2d 1066, 1068–69 (1973), the Hawaii Supreme Court explained the purpose of that amendment. In a case where a police informant, without the assistance of electronic devices, testified about purchasing marijuana, the court held the evidence admissible. The Hawaii privacy amendment was held not to prevent a person's repeating a conversation. Its purpose was described as follows:

A careful review of Report No. 55 of the 1968 Constitutional Convention, in which the amendment was proposed, and of the debates in the Committee of the Whole regarding that amendment, has led us to conclude that the delegates to the constitutional convention added to article I, § 5 the words "invasion of privacy" out of a concern to protect against extensive governmental use of electronic surveillance techniques, and not out of any desire to curb the activities of secret government agents.[23]

As noted previously, California has also recently approved an amendment to its constitution, including the right to privacy among the inalienable rights of all people. In *White v. Davis*, 13 Cal.3d 757, 120 Cal. Rptr. 94, 533 P.2d 222 (1975), a case which illustrates that the dire, Orwellian *1984* predictions by those opposing the warrantless use of electronic devices are not figments of imagination, the California right to privacy provision was applied. Police officers posed as students and covertly recorded discussions in university classes and in public and private meetings. In holding such surveillance activities to be in violation of California's privacy amendment, the court stated:

> Although the full contours of the new constitutional provision have as yet not even tentatively been sketched, we have concluded that the surveillance and data gathering activities challenged in this case do fall within the aegis of that provision.[24]

■ Similarly, we believe that Alaska's privacy amendment prohibits the secret electronic monitoring of conversations upon the mere consent of a participant. Like California's provision, the contours of Alaska's right to privacy are not yet firmly established.[25] The meaning of privacy of

19. *Gray v. State*, 525 P.2d 524, 528 (Alaska 1974).

20. *Woods & Rohde, Inc. v. State*, 565 P.2d 138, 149 (Alaska 1977).

21. *See Katz v. United States, supra* 389 U.S. at 350–51, 88 S.Ct. at 510–511, 19 L.Ed.2d at 581; and *Dietemann v. Time, Inc.*, 449 F.2d 245, 251 (9th Cir. 1971), and cases cited therein.

22. Art. I, sec. 5, Hawaii Constitution.

23. *Id.* at 1068–69.

24. 120 Cal.Rptr. at 105, 533 P.2d at 233.

25. Among the cases applying the Alaska constitutional provision are: *State v. Erickson*, 574 P.2d 1 (Alaska 1978) (possession of cocaine for personal use in the home not protected); *Fal-*

necessity must vary depending on the factual context and the often competing interests of society and the individual.[26] The protection has been defined,[27] for example, as the right "to be let alone,"[28] the right of persons "to determine for themselves when, how, and to what extent information about them is communicated to others,"[29] and the right which protects "the individual's interest in preserving his essential dignity as a human being."[30] Our conclusion is consistent with these concepts and with the test of privacy articulated by Justice Harlan in *Katz, supra,* and adopted by this court.

Applying Justice Harlan's two-pronged test, we believe that one communicating private matters to another exhibits an actual (subjective) expectation of privacy whether or not the listener is equipped with electronic devices. The key question is whether that expectation of privacy is one that society is prepared to recognize as reasonable.

■ In the context of law enforcement, it is true that the use of informers is a highly necessary tool in fighting crime. In combating illegal sale of drugs, as involved in this case, because of the clandestine nature of the transactions, testimony by police informers or others trusted by the criminal is one of the few methods by which convictions may be obtained.[31] Society is not willing to accept as reasonable the subjective expectation of one engaged in a conversation that it will not be repeated. For generations, while not condoning the gossip or false friend, society has countenanced the repetition of private conversations. The use of surreptitious electronic devices to broadcast or record conversations, however, is a development of recent vintage. We conclude that the expectation that one's conversations will not be secretly recorded or broadcast should be recognized as reasonable.

Even prior to California's enactment of its privacy amendment, the United States Court of Appeals for the Ninth Circuit held, in a diversity case, that a California common law cause of action for invasion of privacy was established when employees of Time, Inc., gained entrance to the office portion of the plaintiff's home with his consent and then secretly photographed him and electronically recorded and transmitted his conversation to third persons without his consent. The activity occurred in cooperation with the police in cracking down on medical quackery. Expressing the view of many jurisdictions that such electronic surveillance violated privacy rights, the court stated:

In jurisdictions other than California in which a common law tort for invasion of privacy is recognized, it has been consistently held that surreptitious electronic recording of a plaintiff's conversation causing him emotional distress is actionable. Despite some variations in the description and the labels applied to the tort, there is agreement that publication is not a necessary element of the tort, that the existence of a technical trespass is immaterial, and that proof of special

---

con v. Alaska Public Offices Commission, 570 P.2d 469 (Alaska 1977) (certain information communicated to physicians is within zone of privacy); *Woods & Rohde, Inc. v. State,* 565 P.2d 138 (Alaska 1977) (warrantless administrative inspections of private business premises prohibited); *Anderson v. State,* 562 P.2d 351 (Alaska 1977) (state may control sexual conduct of juveniles); *Ravin v. State,* 537 P.2d 494 (Alaska 1975) (possession of marijuana by adults for personal use in the home protected). *See also,* Howard, "State Courts and Constitutional Rights in the Day of the Burger Court," 62 Va.L.Rev. 873, 928–37 (1976).

**26.** *See State v. Erickson,* 574 P.2d 1, 22 n. 144 (Alaska 1978).

**27.** *See generally,* Hodges, "Electronic Visual Surveillance and the Fourth Amendment: The Arrival of Big Brother?" 3 Hastings Const.L.Q. 261, 262–63 (1976).

**28.** Warren and Brandeis, "The Right to Privacy," 4 Harv.L.Rev. 193, 205 (1890).

**29.** Westin, *Privacy and Freedom* 7 (1967).

**30.** Hufstedler, "The Directions and Misdirections of a Constitutional Right of Privacy," 26 Record of N.Y.C.B.A. 546, 550 (1971).

**31.** *Pascu v. State,* 577 P.2d 1064, 1068 (Alaska 1978).

damages is not required. (*E. g., Nader v. General Motors Corp.* (1970) 25 N.Y.2d 560, 307 N.Y.S.2d 647, 255 N.E.2d 765 (applying District of Columbia law); *Hamberger v. Eastman* (1964) 106 N.H. 107, 206 A.2d 239; *Roach v. Harper* (1958) 143 W.Va. 869, 105 S.E.2d 564; *McDaniel v. Atlanta Coca-Cola Bottling Co.* (1939) 60 Ga.App. 92, 2 S.E.2d 810; *cf. Pearson v. Dodd*, 133 U.S.App.D.C. 279, 410 F.2d 701, cert. denied (1969) 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465).[32]

 If for the purposes of civil litigation, participant electronic bugging constitutes an invasion of a common law right to privacy, such conduct obviously violates an expressed constitutional declaration of the right. In the absence of a search warrant, evidence so obtained should be held to be illegally acquired.

 It seems only just that conduct of those engaged in criminal activity be revealed. Legitimate interests of law enforcement authorities, however, may generally be met in the same manner as in other searches and seizures. In the absence of limited exceptions, a search warrant should be obtained from an impartial magistrate, based on probable cause to believe that criminal activity will be discovered,[33] before electronic monitoring of conversations should be allowed. It may be that, as in other search and seizure contexts, the requirement of a warrant may be obviated under exigent circumstances. We withhold passing on that issue until presented with a specific case. Generally, however, a search warrant should be required before permitting electronic monitoring of conversations.

 We believe that this requirement will not unreasonably impinge on legitimate law enforcement efforts.[34] In *United States v. White, supra*, there was testimony about eight separate conversations that were monitored. 401 U.S. 745, 747, 91 S.Ct. 1122, 1123, 28 L.Ed.2d 453, 456. Certainly, based on an affidavit of the informant as to earlier non-monitored conversations, a warrant was obtainable. In Glass' case, it appears that Ms. Baker believed she could purchase heroin at Glass' home.[35] If there were probable cause for the belief, a warrant could have been secured.[36] Just as the warrant requirement protects against unreasonable search and seizures, it can prevent improper invasions of privacy by electronic monitoring. Alaska's Constitution mandates that its people be free from invasions of privacy by means of surreptitious monitoring of conversations.

32. 449 F.2d at 247–48.

33. *See, e. g., Keller v. State*, 543 P.2d 1211, 1215 (Alaska 1975); *State v. Spietz*, 531 P.2d 521, 523 (Alaska 1975).

34. One argument advanced is that bugging aids in safeguarding informants. This may be questionable since the presence of electronic devices on the informant may add to his risk, because sophisticated "anti-bugging" technology may disclose the presence of the device or it may otherwise be discovered. In any event, New Hampshire has met that contention by holding that a statute which permits participant monitoring does not permit the introduction at trial of a tape recording of a conversation transmitted by such a device. The court held that the purpose of the statute's exception was to allow police officers to protect the undercover officer and that monitoring for purposes of rescue was not equivalent to monitoring for purposes of introduction of the conversation at trial. *State v. Ayres*, 383 A.2d 87, 88 (N.H.1978).

35. We have previously recognized the high degree of protection surrounding the home. *See,* e. g., *Anderson v. State*, 562 P.2d 351, 358 (Alaska 1977); *Ravin v. State*, 537 P.2d 494, 503–04 (Alaska 1975). We decline to base our holding on this particularized protection, however, since we have concluded that the right of privacy is infringed by warrantless participant monitoring of private conversations regardless of the locus of the police surveillance.

36. The dissent cites Justice Coleman's prediction in her dissent in *People v. Beavers*, 393 Mich. 554, 227 N.W.2d 511, 522 *cert. denied*, 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111 (1975), that the technical requirements for specificity in the issuance of a warrant could frustrate legitimate searches and seizures of conversations incident to criminal activity. We do not agree. Conversations, of course, may occur in a variety of places and on a variety of subjects. What is required is a description of the person and subject which is reasonable under the circumstances, and we shall leave further refinement of requirements to future cases.

We hold that Judge Blair's well-reasoned decision suppressing the evidence obtained by electronic surveillance correctly applied the precepts guaranteed by art. I, secs. 14 and 22 of the Alaska Constitution.[37]

AFFIRMED.

BURKE, J., dissents.

BURKE, Justice, dissenting.

The Supreme Court of the United States has consistently held that the Fourth Amendment does not prevent the use, as evidence, of statements electronically monitored or recorded under circumstances similar to those present in the case at bar. *See, e. g., Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952). *See also United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Other federal courts and a multitude of state courts interpreting similar provisions found in their own state constitutions have expressed the same view. *See Annot.*, 97 A.L.R.2d 1283 (1964). Thus, the overwhelming weight of authority holds that evidence secured by means of a mechanical or electronic monitoring device is admissible, where it appears that one of the parties to the conversation consented to or cooperated in its interception. *Id.*

In *On Lee v. United States, supra*, a narcotics agent overheard a conversation by means of a microphone and radio transmitter carried by an informant with whom the defendant spoke. The agent's testimony relating what he had heard was held properly admitted against the defendant in his trial for selling opium. Rejecting the defendant's argument that such conduct was analogous to illegal wiretapping, the Supreme Court of the United States held that there was no violation of his Fourth Amendment rights, saying:

> The presence of a radio set is not sufficient to suggest more than the most attenuated analogy to wiretapping. Petitioner was talking confidentially and indiscreetly with one he trusted, and he was overheard. This was due to aid from a transmitter and receiver, to be sure, but with the same effect on his privacy as if agent Lee had been eavesdropping outside an open window. The use of bifocals, field glasses or the telescope to magnify the object of a witness' vision is not a forbidden search or seizure, even if they focus without his knowledge or consent upon what one supposes to be private indiscretions. It would be a dubious service to the genuine liberties protected by the Fourth Amendment to make them bedfellows with spurious liberties impro-

---

**37.** Although it has not been raised by the parties, we note the existence of AS 11.60.290 which provides:

> *Eavesdropping.* It is unlawful for a person to
>
> (1) use an eavesdropping device to hear or record all or any part of an oral conversation without the consent of a party to the conversation;
>
> (2) use or divulge any information which he knows or reasonably should know was obtained through the illegal use of an eavesdropping device for his own or another's benefit;
>
> (3) publish the existence, contents, substance, purport, effect or meaning of any conversation he has heard through the illegal use of an eavesdropping device;
>
> (4) divulge, or publish the existence, contents, substance, purpose, effect or meaning of any conversation he has become acquainted with after he knows or reasonably should know that the conversation and the information contained in the conversation was

obtained through the illegal use of an eavesdropping device.

Conduct prohibited by AS 11.60.290 is punishable by fine or imprisonment or both pursuant to AS 11.60.310. Our holding is unaffected by this statute, however, since we are interpreting constitutional provisions. Moreover, we do not construe AS 11.60.290 as positively sanctioning conduct not declared unlawful therein. The report of the House Judiciary Committee accompanying the original bill, enacted prior to the adoption of the right to privacy amendment, stated:

> In regard to evidence obtained by wiretap or other eavesdropping devices being used in court proceedings the bill does not in any way change the existing law of Alaska. The admittance or rejection of such evidence is left to case law and the rules governing the admissibility of evidence as interpreted by the court.

1966 H.J. at 525–29. *See also, Roberts v. State*, 453 P.2d 898, 900–02 (Alaska 1969).

vised by farfetched analogies which would liken eavesdropping on a conversation, with the connivance of one of the parties, to an unreasonable search or seizure. We find no violation of the Fourth Amendment. . . .[1]

In *Lopez v. United States, supra,* the Supreme Court gave its approval to use of a wire recording of a conversation between the defendant and an Internal Revenue agent in which the defendant offered the agent a bribe. During a visit to the defendant's office the agent recorded the conversation on a small recording device carried in his pocket. Noting, as did the superior court in this case, that the agent himself could testify about the conversation, the Court said:

Once it is plain that [agent] Davis could properly testify about his conversation with Lopez, the constitutional claim relating to the recording of that conversation emerges in proper perspective. The Court has in the past sustained instances of "electronic eavesdropping" against constitutional challenge, when devices have been used to enable government agents to overhear conversations which would have been beyond the reach of the human ear. *See, e. g., Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 [66 A.L.R. 376]; *Goldman v. United States,* 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322. It has been insisted only that the electronic device not be planted by an unlawful physical invasion of a constitutionally protected area. *Silverman v. United States* [365 U.S. 505, 81 S.Ct. 679], 5 L.Ed.2d 734, supra. The validity of these decisions is not in question here. Indeed this case involves no "eavesdropping" whatever in any proper sense of that term. The Government did not use an electronic device to listen in on conversations it would not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a partici-

pant and which that agent was fully entitled to disclose. And the device was not planted by means of an unlawful physical invasion of petitioner's premises under circumstances which would violate the Fourth Amendment. It was carried in and out by an agent who was there with petitioner's assent, and it neither saw nor heard more than the agent himself.[2]

More recently, in *United States v. White, supra,* the Supreme Court reversed a decision of the United States Court of Appeals for the Seventh Circuit which held that it was error to admit the testimony of a government agent relating a conversation between the defendant and an informant overheard by monitoring transmissions from a radio transmitter concealed upon the person of the informant. Four members of the Court saw no necessity for a warrant. In a plurality opinion, Mr. Justice White stated:

Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. *Hoffa v. United States,* 385 U.S. [293] at 300–303, 87 S.Ct. 408 at 412–414 [17 L.Ed.2d 374 at 381, 382]. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States,* supra; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. *On Lee v. United States,* supra. If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the

---

1. 343 U.S. at 753–54, 72 S.Ct. at 972.

2. 373 U.S. at 438–39, 83 S.Ct. at 1387–88.

same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.[3]

The view reflected by the foregoing authorities has been incorporated in § 4.1 of the American Bar Association's Standards

Relating to Electronic Surveillance (Approved Draft, 1971). The standard provides: .

The use of electronic surveillance techniques by law enforcement officers for the overhearing or recording of wire or oral communications with the consent of one of the parties should be permitted.[4]

**3.** 401 U.S. at 751, 91 S.Ct. at 1125. Mr. Justice Black concurred in the judgment of the Court for the reasons set forth in his dissent in *Katz v. United States*, 389 U.S. 347, 364, 88 S.Ct. 507, 518, 19 L.Ed.2d 576, 589 (1967), namely: that eavesdropping carried out by electronic means involves no "search" or "seizure." In *Katz* the Court held that there was a Fourth Amendment violation where government agents attached a listening device to the outside of a telephone booth and recorded the defendant's end of a telephone conversation. Unlike the facts in this case, no party to that conversation had consented to its being monitored and recorded by the police. Mr. Justice Brennan concurred in the result in *White*, stating that reversal was required by *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). In *Desist* the Court held that *Katz, supra*, would apply prospectively, i. e., only to those electronic surveillances occurring after the date of that decision in 1969. (The surveillance in *White v. United States* occurred in 1965.) However, Mr. Justice Brennan further expressed the belief that the Fourth Amendment imposes a warrant requirement both where an informant secretly records a conversation with the accused and where he transmits that conversation as was done in the case at bar.

**4.** The commentary to § 4.1 states:
Ultimately, the standard . . . rests on the proposition that the "function of a trial is to seek out and determine the truth or falsity of the charges brought against the defendant." *Lopez v. United States*, 373 U.S. 427, 440 [83 S.Ct. 1381, 10 L.Ed.2d 462] (1963). To that end, the law must always seek to obtain the best and most reliable evidence. Traditionally, that evidence has consisted mainly of the testimony of witnesses who saw or heard what they later reveal in court. No man knows better, however, the fallibility of human testimony than that man who is trained in the law. The prospect that science through electronic surveillance techniques can provide us with evidence not subject to the frailties of human nature ought, therefore, to be applauded. The use of such techniques in this area, in short, should be encouraged, not discouraged, and they should not be encumbered with administrative procedure. Where trained investigators are con-

ducting routine interviews, reliance may properly be placed in the agents' memories aided by notes taken contemporaneously. See *Campbell v. United States*, 373 U.S. 487 [83 S.Ct. 1356, 10 L.Ed.2d 501] (1963). But where informants, whose credibility may be suspect, are used, see, e. g., *Osborn v. United States*, 385 U.S. 323 [87 S.Ct. 429, 17 L.Ed.2d 394] (1966), where victims of crimes are engaged in key conversations with the perpetrators themselves, see, e. g., *Rathbun v. United States*, 355 U.S. 107 [78 S.Ct. 161, 2 L.Ed.2d 134] (1957), or where the investigators as such are individually involved and their credibility will be a significant factor in the subsequent trial, see, e. g., *Lopez v. United States*, 373 U.S. 427 [83 S.Ct. 1381, 10 L.Ed.2d 462] (1963), every effort should be made to record the conversations through the best available means. For a recording will reproduce the very words spoken with all the added significance that comes from inflection, emphasis and the other aspects of oral speech. See *State v. Reyes*, 209 Ore. [Or.] 595, 308 P.2d 182 (1957). The goal of finding the truth in the criminal trial demands no less. The defendant, too, has a stake in the best evidence being presented to the court and jury. Thus, recording as such "involves no 'eavesdropping' whatever in any proper sense of that term." *Lopez v. United States*, 373 U.S. 427, 439 [83 S.Ct. 1381, 10 L.Ed.2d 462]. It should not be unthinkingly placed in the same category with wiretapping or bugging. Williams, *The Wiretapping-Eavesdropping Problem: A Defense Counsel's View*, 44 Minn.L.Rev. 855, 866 (1960); Schwartz, *On Current Proposals To Legalize Wiretapping*, 103 U.Pa.L.Rev. 157, 166–67 (1954). Overhearing too, is not eavesdropping. "When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. * * * It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording or transmitting to another." *Katz v. United States*, 389 U.S. 347, 363 n* [88 S.Ct. 507, 19 L.Ed.2d 576] (1967) (White, J. concurring).
The crucial issue in any overhearing or recording situation is instead the right of the

One of the two decisions called to our attention holding directly to the contrary is from the Supreme Court of Michigan, *People v. Beavers*, 393 Mich. 554, 227 N.W.2d 511 (1975), *cert. denied*, 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111 (1975). In that case the court held that in the absence of a search warrant, electronic monitoring of a defendant's conversation with an informant constituted an unreasonable search and seizure, under a provision of the Michigan Constitution similar to our own art. I, § 14. However, the Michigan court held, as did the superior court in the case at bar:

> The admissibility of the informant's testimony is in no way affected by ruling inadmissible the testimony of the two police officers [who monitored the conversation]. The warrantless monitoring and subsequent testimony of these two witnesses renders tainted the *transmitted* account of the conversation, but does not in any way prevent the informant from testifying as to the statement spoken to him *directly.*[5]

In a well-reasoned dissent, Justice Coleman of the Michigan court, criticized the position taken by her colleagues, stating:

> By federal standards and, I assume, by the standards of the majority of this Court, a record from a device taped to [the informant's] body would be admissible in evidence as would be testimony by people listening from a closet or at an open window or viewing the premises with binoculars. Conversations can be written down or related to third parties. As a practical matter, monitoring the same consensual conversation through a "walkie-talkie" provides no greater degree of "intrusion."

---

witness himself to testify. Where he is entitled to testify, there can be no valid objection to the use of an overhearing or recording device, and the introduction of its product at trial. No one should have the right to exclude the testimony of a third party or a recording and "rely on possible flaws in the [witness's] . . . memory, or to challenge [his] . . . credibility without being beset by corroborating evidence that is not susceptible to impeachment." *Lopez v. United States*, 373 U.S. at 439 [83 S.Ct. 1381]. Overhearing, too, may be necessary for the protection of an informant. Only the

It serves to encourage defendant's honesty and to protect the life of the agent or informant. He plays a deadly game and the microphone allows him speedy access to help.

More importantly, it provides a means to protect the courtroom against degrading and flagrant use of perjury.

Further, the very nature of the narcotics trade renders it subject to need for quick action. Otherwise, the "bird will have flown," the opportunity to listen to a "buy" will have been lost. The requirement that the officer first find a magistrate and then try to describe the conversation to be "seized" and the place (under *Katz*, it could be anyplace, including some sidewalk) where it is to be "seized" and then to go with the warrant (if any) to the scene is designed for self-defeat.[6]

Like Justice Coleman I believe the better view is that favored by the great weight of authority. Accordingly, in the case at bar, I would hold that the recording of respondent Glass' conversations with the informant Baker was not a violation of any right guaranteed to Glass by art. I, § 14 of the Constitution of the State of Alaska, and that the superior court erred in suppressing evidence of that tape recording on the grounds stated.

Similar reasoning leads me to the further conclusion that there was no violation of Glass' rights under art. I, § 22 of the State Constitution. That section provides:

> The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

---

most serious reasons grounded in the most fundamental policy considerations should warrant the failure to use or the suppression of relevant and reliable evidence. *Nardone v. United States*, 308 U.S. 338, 340 [60 S.Ct. 266, 84 L.Ed. 307] (1939). Overhearing or recording involves none of those reasons or considerations.
A.B.A. Standards Relating to Electronic Surveillance (Approved Draft, 1971) at 126–27.

5. 227 N.W.2d at 516. (Emphasis in original.)

6. *Id.* at 522.

Unquestionably, as recognized by the superior court, and even respondent, Baker would be entitled to testify concerning her own dealings with Glass and to relate the conversations surrounding those dealings to the best of her recollection. Therefore, the electronic recording of those conversations was not an invasion of respondent's privacy. The electronic recording simply provided an accurate record of the incriminating statements made to Baker and it is undisputed that Baker could testify personally as to these statements. As stated in *Lopez v. United States, supra*:

> Stripped to its essentials [respondent's] argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. For no other argument can justify excluding an accurate version of a conversation that the agent could testify to from memory.[7]

I consider that argument to be without merit. Like the Supreme Court of the United States in *Lopez,* I think that the risk respondent took in dealing with Baker included the risk that the words spoken "would be accurately reproduced in court, whether by faultless memory or mechanical recording." [8] *See also State v. Roy,* 54 Haw. 513, 510 P.2d 1066 (1973).

The majority's reliance on *White v. Davis,* 13 Cal.3d 757, 120 Cal.Rptr. 94, 533 P.2d 222 (1975), is, I believe, completely unwarranted. I see little similarity between the surveillance done in the case at bar and that done in *White,* where police officers engaged in wholesale secret recording of university class discussions in order to compile dossiers on those present, rather than as part of an investigation of specific criminal activity. Central to the California Supreme Court's condemnation of the surveillance in that case was the obvious threat posed to First Amendment freedoms, and its recognition that, " 'The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.' " 120 Cal.Rptr. at 101, 533 P.2d at 229, quoting the Supreme Court of the United States in *Shelton v. Tucker,* 364 U.S. 479, 487, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960). In short, any governmental interest that might have been furthered by the type of surveillance carried on in that case was held to be outweighed by a free society's interest in having the university classroom remain a forum for the free exchange of ideas. I certainly applaud the decision in *White,* but what that all has to do with the situation in the case at bar is beyond my ken.

I would reverse the superior court's suppression order.

---

**7.** 373 U.S. at 439, 83 S.Ct. at 1388.

