**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 1264, Appellant,**

**v.**

**MUNICIPALITY OF ANCHORAGE and Anchorage Daily News, Appellees.**

No. S–7993.

Supreme Court of Alaska.

Feb. 12, 1999.

Charles A. Dunnagan, Jermain, Dunnagan & Owens, P.C., Anchorage, for Appellant.

Ann Waller Resch, Deputy Municipal Attorney, and Mary K. Hughes, Municipal Attorney, Municipality of Anchorage, for Appellee Municipality of Anchorage.

D. John McKay, Law Office of D. John McKay, Anchorage, for Appellee Anchorage Daily News.

Before MATTHEWS, Chief Justice, and COMPTON, EASTAUGH, and BRYNER, Justices.

## OPINION

MATTHEWS, Chief Justice.

### I. INTRODUCTION

The International Association of Fire Fighters, Local 1264, (IAFF) sought a declaratory judgment and an injunction to prevent the Municipality of Anchorage (MOA) from releasing municipal employees' names in conjunction with their salaries to the Anchorage Daily News (News). IAFF alleged that the disclosure violated article I, section 22 of the Alaska Constitution and Anchorage Municipal Code (AMC) section 3.90.040(B) (1996). We affirm the superior court's decision that the disclosure did not violate the employees' constitutional or statutory rights to privacy, and hold that municipal employees do not have a reasonable expectation of privacy in their names and salaries.

### II. FACTS AND PROCEEDINGS

MOA has released a salary list of municipal employees annually since before 1982. This list includes employees' names, job titles, departments, base salaries, overtime, benefits, and cashed-in leave. Information from the list, such as names and salaries of the highest-paid municipal employees, has been subsequently published by the News.

On September 12, 1996, IAFF's attorneys requested that MOA release the information by job classifications instead of by individual names. When MOA did not respond by January 9, 1997, IAFF filed a complaint in superior court seeking an injunction and a declaratory judgment that MOA's disclosure of specific employees' names in conjunction with their salaries violated their constitutional and statutory rights to privacy. The News then intervened in the action.

The superior court held that the disclosure was not an unwarranted invasion of privacy, because the municipal employees do not have a reasonable expectation of privacy in the amount of public money they are paid. The court also stated that even if IAFF had established a privacy right, it was outweighed by the countervailing "public interest in disclosure." The superior court issued a final judgment denying injunctive relief and dismissing the action with prejudice.

IAFF appeals this decision.

### III. DISCUSSION [1]

A. *MOA Did Not Violate the Municipal Employees' Constitutional Right of Privacy by Disclosing Their Names in Conjunction with Their Salaries.*

▆▆▆ Article I, section 22 of the Alaska Constitution provides: "The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement

---

1. The question of whether article I, section 22 of the Alaska Constitution or AMC 3.90.040(B) prohibits disclosure of the municipal employees' names in conjunction with their salaries is a question of law which this court reviews de novo.

See *Jones v. Jennings*, 788 P.2d 732, 735 (Alaska 1990). We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

this section." IAFF argues that MOA violated the municipal employees' right to privacy under article I, section 22 of the Alaska Constitution by disclosing their names in conjunction with their salaries. This court has recognized that "under appropriate circumstances, a statute requiring the disclosure of a person's identity must yield to the constitutional right to privacy." *Alaska Wildlife Alliance v. Rue*, 948 P.2d 976, 980 (Alaska 1997). Thus, MOA could not disclose the municipal employees' names and salaries if the disclosure would violate their constitutional privacy rights.

■ To determine whether the disclosure of public records violates Alaska's constitutional right to privacy, we apply the following test:

(1) does the party seeking to come within the protection of the right to [privacy] have a legitimate expectation that the materials or information will not be disclosed?

(2) is disclosure nonetheless required to serve a compelling state interest?

(3) if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to [privacy]?

*Id.* (alteration in original) (quoting *Jones v. Jennings*, 788 P.2d 732, 738 (Alaska 1990)).

IAFF argues that municipal employees have a legitimate expectation of privacy in their names and salaries because that information is contained in their personnel files, and is intimate and sensitive information that reveals their financial status. The News and MOA, however, argue that salary information is not personal or private, even if included in a personnel file, and that public employees lack a legitimate expectation of privacy regarding such information.

■ To show that disclosure of the municipal employees' names and salaries vio-

lates their constitutional right to privacy, IAFF must first demonstrate that the municipal employees have a "legitimate expectation that the materials or information will not be disclosed." *Alaska Wildlife Alliance*, 948 P.2d at 980. Such an expectation is one that "society is prepared to recognize as reasonable." *Nathanson v. State*, 554 P.2d 456, 458–59 (Alaska 1976) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). The right to privacy is not absolute; it protects "intimate" or "sensitive personal information ... which, if disclosed even to a friend, could cause embarrassment or anxiety." *Doe v. Alaska Superior Court, Third Judicial Dist.*, 721 P.2d 617, 629 (Alaska 1986) (citations omitted).

IAFF first argues that we have already held that public employees have a legitimate expectation of privacy in their personnel files, which, it claims, includes their names and salaries. In *Jones*, 788 P.2d at 738–39, an excessive force tort case, we indicated that police officers had a legitimate expectation of privacy in their personnel records, which contained their names, addresses, and personal financial information, noting that personnel files " 'contain the most intimate details' of an employee's work history." The confidentiality of salary information, however, was not at issue in *Jones*. The trial court in that case had allowed the policemen's salary information to be withheld until the damages stage of the suit, and the permissibility of its disclosure was not raised before the supreme court. *See id.* at 734.

In *Alaska Wildlife Alliance*, we held that time sheets were not personnel records under AS 39.25.080, the Alaska Personnel Act.[2] This section provides that "[s]tate personnel records" are confidential, and not open to public inspection.[3] We emphasized in *Alas-*

---

**2.** *See Alaska Wildlife Alliance*, 948 P.2d at 979–80 (holding that public employees and private contractors involved in wolf control program had legitimate expectation that state would not disclose their names because they had received credible threats of harm).

**3.** AS 39.25.080 provides in part:

(a) State personnel records, including employment applications and examination mate-

rials, are confidential and are not open to public inspection except as provided in this section.

(b) The following information is available for public inspection, subject to reasonable regulations on the time and manner of inspection:

(1) the names and position titles of all state employees;

(2) the position held by a state employee;

(3) prior positions held by a state employee;

ka *Wildlife Alliance* that the protected personnel records were of a type similar to the examples in the statute, such as "employment applications" and "examination materials," which "contain details about the employee's or applicant's personal life." *Id.* at 979–80. The exceptions to the confidentiality requirement, including "compensation authorized," "tell[ ] little about the individual's personal life, but instead simply describe[ ] employment status." *Id.* at 980. We also noted that courts in other states have found that payroll records, vacation, and sick leave attendance records are disclosable because they are not "private facts of a personal nature." *Id.* at 979–80 (citations omitted).

■ Thus we have defined the term "personnel record" narrowly, to include only information which reveals the details of an individual's personal life. *Id.* at 980. Our statement in *Jones* that personnel files contain intimate details about "work history" is consistent with this analysis. Work history *is* personal information, but it only includes information like employment applications and examination materials—not information such as base salary and benefits. *Id.* at 979–80. When *Jones* and *Alaska Wildlife Alliance* are read together, it is clear that employees only have a legitimate expectation of privacy in the personal information contained in their personnel records. The employees' names and salaries, however, are not personal information, and would not be protected by the constitutional right to privacy under our decisions in *Jones* and *Alaska Wildlife Alliance.*

IAFF also argues that language from our decisions in *State v. Glass,* 583 P.2d 872

(Alaska 1978), and *State, Department of Revenue v. Oliver,* 636 P.2d 1156 (Alaska 1981), demonstrates that they have a legitimate expectation of privacy in their salaries, because it is information about their "personal finances." In *Glass,* we partially justified our holding that electronic surveillance violated the right to privacy with the following statement: "Clever prodding may elicit thoughtless comments about sex, religion, politics, acquaintances, personal finances and even one's innermost thoughts." *Id.* at 878. This statement, however, was merely a passing reference to "personal finances" in a search and seizure case, and does not control the issue of whether public employees' salaries are private information. In *Oliver,* we stated that *Glass* "alludes to personal finances as one kind of information within an individual's expectation of privacy." 636 P.2d at 1166 (citing *Glass,* 583 P.2d at 878). However, we did not decide whether taxpayers had a legitimate expectation of privacy in their income tax information, because the State conceded this point. *Id.* This statement in *Oliver,* therefore, is merely dictum. These statements do not address the question whether the salary of a public employee falls within the concept of protected personal finances.

Several other jurisdictions have held that public employees do not have a privacy expectation in their names and salaries.[4]

Furthermore, salaries of public employees are not merely private matters.

[O]ne aspect of a private matter is that it is private, that is, that it does not adversely affect persons beyond the actor, and hence is none of their business. When a

(4) whether a state employee is in the classified, partially exempt, or exempt service;
(5) the dates of appointment and separation of a state employee; and
(6) the compensation authorized for a state employee.

4. *See, e.g., Pottle v. School Committee of Braintree,* 395 Mass. 861, 482 N.E.2d 813 (1985) (upholding disclosure of public employees' names and addresses); *Hastings & Sons Pub. Co. v. City Treasurer,* 374 Mass. 812, 375 N.E.2d 299, 301–04 (1978) (holding that disclosure of municipal employees' payroll records, including their names, addresses, base pay, overtime, miscellaneous payments and gross pay, did not violate constitutional right to privacy because informa-

tion was not "intimate details of a highly personal nature"; names and salaries were not type of information legislature intended to exempt as personnel records) (citations omitted); *State ex rel. Jones v. Myers,* 61 Ohio Misc.2d 617, 581 N.E.2d 629, 630–31 (1991) (holding that disclosure of payroll records, which included names, earnings, statutory withholdings, vacations, sick leave, garnishments, and court-ordered support payments, did not violate privacy because "[t]he public has an absolute right to ascertain the earnings of its servants"; however, deductions for deferred compensation plans, savings bond investments and Christmas club should not be disclosed because this type of information was personal financial information).

matter does affect the public, directly or indirectly, it loses its wholly private character, and can be made to yield when an appropriate public need is demonstrated.[5]

Because the amount public employees are paid clearly affects the public, following *Luedtke*, the salary information in this case cannot be considered "wholly private."

Other states have also held that public employees have a reduced expectation of privacy.[6]

We thus hold that municipal employees do not have a legitimate expectation of privacy in their names and salaries. Even if this information is included in their personnel records, it is not sensitive or personal. In addition, as public employees, they have a reduced expectation of privacy in their salaries, which are clearly of legitimate public concern. Thus disclosure of their names and salaries does not violate their constitutional right to privacy.

**5.** *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1135 (Alaska 1989) (quoting *Ravin v. State*, 537 P.2d 494, 504 (Alaska 1975)); *see also City of Kenai v. Kenai Peninsula Newspapers, Inc.*, 642 P.2d 1316, 1324 (Alaska 1982) (recognizing that applicants for high government positions expose their private lives to public scrutiny).

**6.** *See, e.g., Braun v. City of Taft*, 154 Cal.App.3d 332, 201 Cal.Rptr. 654, 662 (1984) ("Although one does not lose his right to privacy upon accepting public employment, the very fact that he is engaged in the public's business strips him of some anonymity."); *Pottle*, 482 N.E.2d at 817 (stating that public employees have "diminished expectations of privacy"); *Hastings*, 375 N.E.2d at 304 (stating that municipal employees are subject to restrictions and regulations not affecting private employees).

**7.** AMC 3.90.030 provides in part:
  Except as provided by section 3.90.040, or by other provisions of municipal, state or federal law, the municipality shall make all public records open to inspection by any person subject to guidelines regulating the time, place and manner of inspection which may be adopted by the municipal mayor pursuant to section 3.90.050. The types of records and information open to public inspection pursuant to this chapter shall include but shall not be limited to the following:
  ....
  D. *Salary levels and fringe benefits* accorded municipal officers and employees by law,

**B. MOA Did Not Violate AMC 3.90.040(B) by Disclosing the Municipal Employees' Names in Conjunction with Their Salaries.**

■ IAFF also argues that MOA's disclosure of the municipal employees' names in conjunction with their salaries violated AMC 3.90.040(B). The Anchorage Municipal Code mandates full disclosure by the municipality of all public records, except those prohibited from disclosure by section 3.90.040 or other law. *See* AMC 3.90.030.[7] The disclosure provision must be "liberally construed to require full disclosure of all public records ... except those specifically exempted under section 3.90.040." AMC 3.90.010.[8] One of the specific exceptions to disclosure is AMC 3.90.040(B),[9] which prohibits disclosure of information contained in a personnel file if the information both "reveal[s] the financial ... status of any specific individual," and "would constitute an unwarranted invasion of privacy." *Jones v. Jennings*, 788 P.2d 732, 736 (Alaska 1990) (alteration in original).

  including information in regard to the pay range and step grade of an employee or officer, and statistical analyses or compilations relating to municipal practices and policies concerning compensation for various occupational groups, departments and divisions.
(Emphasis added.)

**8.** AMC 3.90.010 provides:
  It is the policy of the municipality to provide the fullest and most rapid public access to municipal records and information so that the right of the people to remain informed is protected. In enacting this measure, the assembly recognizes the competing interests of personal privacy and the right of the public to have access to information concerning the conduct of the people's business. This chapter shall therefore be liberally construed to require full disclosure of all public records in the possession or control of any municipal agency, except those specifically exempted under section 3.90.040.

**9.** AMC 3.90.040 provides in part:
  This chapter shall not be construed to require disclosure of:
  ....
  B. Personnel, payroll or medical files, equal rights commission files or other files which reveal the financial or medical status of any specific individual, the release of which would constitute an unwarranted invasion of privacy.

# 1137

Independent analysis of whether MOA's disclosure of the municipal employees' names and salaries violated AMC 3.90.040(B) is not necessary, however. To satisfy this exception from disclosure, the disclosure must be an "unwarranted invasion of privacy." AMC 3.90.040(B). Determining whether disclosure is an "unwarranted invasion of privacy" depends on the same considerations discussed above concerning the constitutional right to privacy. Public employment salary information is not information of a personal nature and its disclosure is justified by the public interest. Therefore the disclosure exception does not apply, and the information was properly disclosed pursuant to AMC 3.90.030.

## IV. CONCLUSION

As public employees, the municipal employees do not have a legitimate expectation of privacy in their names and salaries. We AFFIRM the superior court's decision that the disclosure did not violate the municipal employees' constitutional or statutory rights to privacy.

FABE, Justice, not participating.